UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARIA PEREZ, | : | CIVIL ACTION NO. |
| Plaintiff, | : | 3:13-CV-868 (JCH) |
| | : | |
| v. | : | |
| | : | |
| CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration, | : : : | |
| Defendant. | : | SEPTEMBER 29, 2014 |
| | : | |

**RULING RE: PLAINTIFF'S OBJECTION TO MAGISTRATE'S RECOMMENDED RULING (Doc. No. 17)**

Plaintiff Maria Perez brings this action pursuant to section 1631(c)(3) of the Social Security Act to review a final decision by defendant, the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits and Supplemental Security Income.  See 42 U.S.C. § 1383(c)(3).  On April 17, 2014, Magistrate Judge Holly B. Fitzsimmons issued a Recommended Ruling on Cross Motions ("Recommended Ruling") (Doc. No. 16) denying Perez' Motion For Order Reversing the Decision of the Commissioner (Doc. No. 12) and granting the Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 15).  In response, Perez submitted an Objection to Magistrate's Recommended Ruling ("Objection") (Doc. No. 17).  For the purposes of this Ruling, the court assumes familiarity with the Recommended Ruling, which describes in detail the factual and procedural background of this case.

**I.     STANDARD OF REVIEW**

As a preliminary matter, a district court reviews de novo those portions of a

1

magistrate judge's recommended ruling to which an objection is made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The remainder of the recommended ruling will be set aside "only for clear error." Campbell v. Astrue, 596 F. Supp. 2d 446, 448 n.1 (D.Conn. 2009). The court may adopt, reject, or modify, in whole or in part, a magistrate judge's recommended ruling. See 28 U.S.C. § 636(b)(1).

In review of a Social Security disability determination, a court will set aside the decision of an administrative law judge ("ALJ") "only where it is based upon legal error or is unsupported by substantial evidence." Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). As the Supreme Court has instructed, substantial evidence means more than a "mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation and citation omitted). Rather, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Further, the substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact. See Gonzalez v. Apfel, 23 F. Supp. 2d 179, 189 (D.Conn. 1998).

Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently. See Eastman v. Barnhart, 241 F. Supp. 2d 160, 168 (D.Conn. 2003). In other words, "[w]here an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

**II.    DISCUSSION**

Perez makes six arguments in her Objection to the Report and Recommendation of the United States Magistrate Judge: (1) the ALJ erred by failing to identify some "severe" impairments as such at Step Two; (2) the ALJ committed per se error by not reflecting every impairment with some limitation in his residual functional capacity (RFC) findings; (3) the ALJ erred by not considering as "impairments" for purposes of his RFC analysis those medical issues being treated adequately by medication; (4) the ALJ erred in discrediting mental-health-related RFC limitations estimated by the advanced practice registered nurse (APRN) who treated the claimant; (5) the ALJ erred in its RFC analysis by not adequately accounting for evidence of lower back pain; (6) the ALJ erred in generating RFC conclusions by combining analysis by state medical consultants that was done before further testing revealed another impairment with liberal estimations as to the impairment evidenced from the new testing.

   A.    Including every "severe" impairments at Step Two

First, Perez argues that Judge Fitzsimmons overlooked the ALJ's failure to identify some impairments as "severe" at Step Two. See Objection at 2; 20 CFR §§ 404.1520(c), 416.920(c).  Assuming the accuracy of this allegation, it does not amount to reversible error.  The ALJ did identify multiple severe impairments at this step.  R. at 13.  He then proceeded to the subsequent steps of analyzing the claimant's disability status.  Id. at 13–20.  Because the analysis did not stop at Step Two—this would have required a finding that the claimant had no severe impairments and was thus not disabled—the ALJ did not prejudice the claimant by not recognizing further impairments.  See Stanton v. Astrue, 370 F. App'x 231, 233 n.1 (2d Cir. 2010).

B.      Reflecting every impairment with an RFC limitation at Step Four

At various points in her Objection, Perez asserts that any impairment, whether or not "severe," must be reflected in the residual functional capacity findings.  See, e.g., Objection at 3.  This is incorrect, as explained with several citations to case law by Magistrate Judge Fitzsimmons.  See Recommended Ruling at 48–49.  Perez' response to this explanation, devoid of any citation to contrary law, is:

> The RR cites to unreported cases for the proposition that a finding of multiple severe impairments need not lead to multiple limitations in an RFC. (RR 49). The merits of those decisions aside, when the ALJ found that there were distinct impairments that impacted the plaintiff's ability to perform basic work activities, those limitations must be represented in the RFC.

Objection at 3.  The court discerns no reason to depart from the principles stated in those decisions.  See Burns v. Astrue, No. 2:11-cv-151-GZS, 2012 WL 313705, *4 (D. Mass. Jan. 30, 2012) (citing Burkstrand v. Astrue, 436 F. App'x 177, 180 (9th Cir. Sept. 15, 2009) and Hughes v. Astrue, 2011 WL 4459097, *10 (W.D.N.C. Sept. 26, 2011). In addition to the cases cited by Magistrate Judge Fitzsimmons, the court notes that Magistrate Judge Conroy treated this issue well in Quimby v. Comm'r of Social Sec., 2010 WL 2425904, *16–17 (D.Vt. April 13, 2010) (discussing Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 427–28 (6th Cir. 2007)), and that Perez provides not a single contrary case that supports her position.  A claimant's residual functional capacity must, of course, be evaluated with due respect to all impairments, severe or not.[1]  But this rule does not compel the further conclusion that every impairment must correlate

---

[1] Perez also asserts that "the ALJ failed to incorporate the limitations caused by [Perez'] distinct severe impairments in considering whether the plaintiff's combination of impairments met a listing." Objection at 2.  The plaintiff does not explain what listing(s) she meant or how Perez might have met such listing(s).

with some discrete limitation at Step Four.

      C.    <u>Consideration of impairments controlled by medication</u>

Perez argues that the ALJ inadequately considered what limitations arose from her heart condition. Objection at 2. The ALJ appears to have credited reports describing Perez' heart condition(s) and to have drawn conclusions about her RFC limitations in light of any related limitations that remained despite medical treatments.

An ALJ need not consider would-be impairments whose symptoms are controlled with medication in the residual functional capacity analysis. A successfully treated—or even merely treatable—impairment is <u>ipso facto</u> not an impairment. See <u>Mongeur v. Heckler</u>, 722 F.2d 1033, 1039 (2d Cir. 1983).[2]

      D.    <u>Partially discrediting or overlooking RFC reports produced in mid-2012 for the present benefits application</u>

When the ALJ analyzed Perez' RFC, he credited contemporaneous treatment notes from monthly treatment sessions spanning from April 2011 through January 2012, R. at 334–38, but not a later report, dated May 14, 2012, from Perez' treating APRN to the extent it indicated that Perez had RFC limitations beyond those the ALJ would find from relying on the treatment notes alone. See R. at 18; R. at 351–53.

After the ALJ issued his written decision on June 5, 2012, Perez submitted her request for review and an accompanying letter brief, both dated June 13, 2012, to the Appeals Council, R. at 6, 253–58. Perez apparently then submitted an additional piece of evidence: a medical report by APRN Wawrzyniak, dated June 28, 2012, with a cosignature by a physician (as required per the instructions on the signature page).

---

[2] To the extent that side effects of such treatment cause their own impairments, those further

5

R. at 354–62.  The Appeals Council Decision, dated June 4, 2013, reflects consideration of the letter brief, see R. at 5, but not the June 28, 2012 medical report.

Perez' Objection appears to assume that the ALJ somehow received the June 28, 2012 report before issuing his June 4, 2012 decision or that the Appeals Council considered this report but declined to act in Perez' favor on the basis of the report. See Objection at 8.

The court now considers three issues relating to these two reports.

       1.    Inadequate weight to APRN's opinion

Perez argues that the decision to discredit the May 14, 2012 report was error because the APRN's opinion was entitled to greater weight.  See Objection at 6–8. She points to the careful reasoning of Magistrate Judge Fitzsimmons in Marshall v. Astrue, 3:11-cv-648, Doc. No. 25 at 36–37 (Recommended Ruling entered Aug. 15, 2012) (citing "the growth of managed health care in recent years and the emphasis on containing medical costs" and the consequent fact that practitioners technically categorized outside the realm of "acceptable medical sources" have "increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists" to conclude that opinions from such sources should often be given "important" weight (quoting SSR 06-3p)).  The court finds this reasoning persuasive and concludes that the opinion of a treating APRN is entitled to meaningful weight under these circumstances.  However, the court also concludes that the ALJ declined to give such weight to the APRN's views here for reasons sufficient to overcome the opinion's weight.  R. 18 (stating, inter alia, that the

---

impairments can be considered, but the claimant does not argue about side effects here.

6

May 2012 report was not supported by the treatment notes); see also Lamond v. Astrue, 440 F. App'x 17, 20–21 (2d Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2) (excepting from "treating physician rule" opinions that are "inconsistent with the other substantial evidence in your case record").

        2.    Inadequate weight to document co-signed by physician

Perez argues briefly—apparently assuming that someone at the SSA reviewed it—that the opinion expressed in the June 2012 report was entitled to more weight because a physician cosigned it. Objection at 8. While there is some dispute about whether a physician's cosigning something ipso facto imparts more weight to it, see Engebrecht v. Comm'r of Social Sec., ___ F. App'x ___, ___, 2014 WL 3409520, *6 (6th Cir. July 14, 2014) (not giving more weight); Payne v. Astrue, 2011 WL 2471288, *5 (D. Conn. June 21, 2011) (giving more weight), the court is not convinced that it would have been error to conclude that this fact imparted no more weight to the report. There is no evidence that any of the medical opinions in the report are those of the doctor, or are based on the doctor's examination of the patient, but only, at most, that he reviewed the report, although the record does not reflect even this fact explicitly. See Recommended Ruling at 69 (quoting Vester v. Barnhart, 416 F.3d 886, 890 (8th Cir. 2005)).

        3.    Appeals Council's possible oversight of June 28, 2012 document

What might have been of more fundamental concern—had Perez raised this issue at any point—is that the Appeals Council did not note in its June 4, 2013 Decision that it considered this additional piece of evidence at all. R. at 4, 5.

The court declines, however, to reverse on this basis for two reasons. First,

Perez has waived this issue by failing to argue that this possible omission by the Appeals Council was prejudicial error.  See generally Objection.  Second, this June 2012 report presents no evidence that is substantially different from the report that the ALJ declined to credit after careful consideration.  See Wicks v. Colvin, ___ F. App'x ___, ___ n.6, 2014 WL 3894335, *4 (10th Cir. Aug. 11, 2014) (concluding that there was "no cause for remand" even though Appeals Council erroneously reported that no evidence was received because the Court of Appeals determined, upon its de novo review of the evidence in question, that "the evidence is not new or material" and thus did not warrant consideration by the Appeals Council under 20 C.F.R. § 404.970(b)).  Indeed, it appears to be no more than the same report, in substance, as the May 2012 report, in slightly different format and with a physician's cosignature (as required by the form).  The document identifies one medication that Perez takes for her mental health, but notes no side effects, just as the May 2012 report had done.  R. at 351, 362.  It describes her mental health treatment from the last five years as "Ind therapy and med mgmt," as the prior report had done verbatim.  R. at 351, 361.  It indicates with "X" markings on four-point scales Perez' functioning on various measures, although with no elaboration on any category, much like the prior report had listed various symptoms with no elaboration.  R. at 352, 359–60.  It lists a five-axis DSM diagnosis, just as the prior report had done.  R. at 351, 358.  And, at its most substantive, it provides brief handwritten notes on several issues—"severe depression, anxiety, low energy, interrupted sleep, appetite varies. Sister died 3/12 + pt also bereaved. Pt hurt by a daughter that refuses to have anything to do with her. 15 yo niece pregnant. Pt has no money, no job + no TV."  R. at 358.  However, the prior report (not to mention other

evidence, in certain respects) covered these issues, as well.   R. at 351–53.

Having considered this document and the potential prejudice from the Appeals Council's apparently not reviewing it, the court concludes that no prejudice resulted from failing to consider a document that is substantially identical to one already discredited and will not reverse the ALJ's decision on this basis.

### E.  Failure to reflect impairments related to lower-back pain in the RFC analysis

Perez objects that the RFC does not appear to reflect any impairments related to lower back pain.  Objection at 2–4.  However, substantial evidence in the record supports the ALJ's apparent conclusion that the claimant does not have any lower-back-related RFC limitations.

In support of her argument that she has lower-back-related RFC limitations, Perez points to a report from a CT scan from August 26, 2010, which simply stated, "Degenerative changes of the spine are noted," R. at 313, a "progress note" from December 8, 2010, which reported "c/o [complaint of] (L) back pain," R. at 276, and a report by consultative examiner Dr. Kordansky on April 9, 2011, which stated, "When the patient was asked to touch her toes she was able to flex lumbosacral area approximately 160 degrees although tenderness was elicited in the lumbosacral area," and also, "She has degenerative osteoarthritis probably in the lumbosacral area."[3]   R. at 269.   The ALJ's decision indicates specifically that he read Kordansky's evaluation, although it does not recount the portions just referenced.

---

[3] The court notes with chagrin that counsel for Ms. Perez omitted the word "probably" from the latter line in every one of her several mentions in her Memorandum of this part of the record, including in direction quotations.   See, e.g., Memorandum Of Law In Support Of Plaintiff's Motion For Order

9

During the course of the hearing before the ALJ, the claimant at no point mentioned any back pain, let alone any particular diagnosis as to any kind of back impairment or any particular RFC limitations caused by such impairment. Perez contests some of this with bare assertions, see Objection at 4 ("the plaintiff did testify has [sic] to functional limitations caused by her impairments"), but provides no reference of any kind to the record. Seeming to concede the point, she presently raises the new argument that "medium exertional work [i.e., work corresponding to the ALJ's RFC finding] requires frequent stooping, crouching and bending, all activities which would be compromised in an individual with lumbar spine impairment." Objection at 4 (citing to SSR 85-15). There is no indication from any of the evidence of a back impairment that the claimant is unable to stoop as required for such work—only that reaching to touch her toes causes "tenderness." See R. at 269. On this record—with no other references to back pain indicated by the claimant, nor any formal diagnosis of a back impairment—the court concludes that substantial evidence supported the ALJ's finding that any back impairments resulted in no additional RFC limitations.

F. Combining analysis from physical evaluations and subsequent mental health analysis

Perez argues that the ALJ erred (1) because his analysis of the limitations imposed by the claimant's mental health impairment did not rely on any medical opinion, and (2) because he relied, for his ultimate conclusions about the claimant's RFC, upon medical opinions made before the evidence of mental-health-related

---

Reversing the Decision of the Commissioner (Doc. No. 12-1) at 6.

limitations existed. Objection at 4–5.

The first argument fails both as an empirical matter and as a matter of legal principle. First, the ALJ <u>did</u> rely upon a medical opinion about the claimant's limitations to determine the RFC-limiting effect of the claimant's mental health issues on her overall RFC. Specifically, while the ALJ rejected the APRN's May 2012 report, he apparently accepted the contemporaneous monthly reports of the same APRN.

Second, the claimant is wrong when she asserts that "the ALJ is not qualified" to make judgments about the facts of a claimant's disability. Objection at 4. An ALJ is required to consider the whole record in evaluating a claimant's disability and is not limited to medical opinions or other evidence provided directly by a medical treatment provider. <u>See</u> 42 U.S.C. 423(d)(5)(B); SSR 06-03p; 20 CFR §§ 404.1512; 404.1513; 416.912; 416.913. If the ALJ has sufficient reason to conclude that the medical records upon which a claimant relies to establish a disability are not credible and that the rest of the information before the ALJ—for example, the claimant's apparent physical abilities as demonstrated in front of the ALJ—does not indicate any disability, he can fairly conclude that the claimant is not disabled.

Perez' second argument also fails. In his decision, the ALJ appears in effect to have agreed with the exertional RFC analysis propounded by the state medical examiners.[4] <u>See</u> Recommended Ruling at 48. Then, presented with (newer) evidence tending to show that the claimant suffered from mental health issues and had

---

[4] The claimant also briefly argues that these RFC analyses are flawed because they do not, and by extension the ALJ did not, consider the claimant's obesity. Magistrate Judge Fitzsimmons fully addressed this issue in her Recommended Ruling, <u>see</u> Recommended Ruling at 55–57, with which this court is in agreement.

11

related nonexertional RFC limitations, the ALJ evaluated that evidence and declined to find it credible to the extent it would impose any new RFC limitations. R. at 18.

The gravamen of the claimant's argument is that the prior (exertional) RFC analysis is rendered invalid by its failure to incorporate the effects of the claimant's later depression. While in principle it seems sensible to assert that an ALJ should not rely upon treatment information that is out of date, as a practical matter any piece of medical evidence is only a snapshot, reflecting a patient's status for a limited period of time. Conclusions about prior or subsequent periods inevitably involve inferences from those snapshots rather than direct evidence about every moment in time. This court does not, and as a practical matter cannot, reject conclusions for this "inadequacy" alone. Thus, the court cannot say that it was error for the ALJ, having declined to credit the new nonexertional evidence to the extent it would impose additional RFC limitations, to conclude that the exertional RFC analyses done before such evidence was available accurately depicted the claimant's RFC throughout the relevant period.

### III. CONCLUSION

For the foregoing reasons, and because the court finds no clear error in the parts of the Recommended Ruling not addressed herein, the court **OVERRULES** the Objection (Doc. No. 17) and **AFFIRMS, ADOPTS, AND RATIFIES** the Recommended Ruling (Doc. No. 16). Perez' Motion For Order Reversing the Decision of the Commissioner (Doc. No. 12) is **DENIED** and the Defendant's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 15) is **GRANTED**. The clerk is directed to close this case.

13

**SO ORDERED**.

Dated at New Haven, Connecticut this 29th day of September 2014.

                /s/ Janet C. Hall
                Janet C. Hall
                United States District Judge